**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DIXON LAW, a Maryland limited liability company; and ERIC DIXON, an individual,** | * | |
| | * | |
| *Petitioners,* | * | |
| **v.** | * | **CASE NO.:** |
| **ERIC POWELL,** *an individual;* **and RICHARD GRAY,** *an individual,* | * | |
| | * | |
| *Respondents.* | | |

**PETITION TO VACATE ARBITRATION AWARD**

Petitioners Dixon Law, LLC and Eric Dixon (collectively, "Petitioners"), by and through undersigned counsel, hereby submit this Petition to Vacate Arbitration Award against Respondents, pursuant to D.C. Code § 16-4423 and the Federal Arbitration Act, 9 U.S.C. § 10(a), and allege as follows:

**JURISDICTION AND VENUE**

1.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332 and D.C. Code § 16-4423.

2.  This action arises out of an arbitration conducted pursuant to an agreement governed by the laws of the District of Columbia.

3.  Venue is proper in this District pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1391 and D.C. Code § 16-4423(a) because the arbitration was conducted in this District and the award Petitioners seek to vacate was rendered in this District.

**PARTIES**

4.  Petitioner Dixon Law, LLC is a Maryland limited liability company.

5.  Petitioner Eric Dixon is an individual residing in the State of Maryland.

6.  Respondent Eric Powell is an individual residing in the State of Colorado.

7. Respondent Richard Gray is an individual residing in the State of California.

8. The amount in controversy exceeds $75,000.

### INTRODUCTION AND FACTUAL BACKGROUND

9. This action arises from a legal malpractice dispute submitted to arbitration pursuant to an engagement agreement between the parties. For clarity, Respondents were the claimants in the underlying arbitration proceeding.

10. Respondents retained Petitioners in connection with legal services relating to a transaction involving the sale of Ratio Clothing, including structuring and documenting the sale and related financing arrangements. The parties' engagement was governed by a written agreement (the "Engagement Letter"), which required that any disputes arising out of the representation be resolved through binding arbitration administered by JAMS and governed by the laws of the District of Columbia.

11. A dispute subsequently arose concerning Petitioners' representation, and Respondents asserted a legal malpractice claim against Petitioners. During pre-litigation, Respondents identified the Hon. Bruce Markell (Ret.) as their standard of care expert and produced an expert report setting forth his opinions.

12. Pursuant to the Engagement Letter, Respondents initiated arbitration before JAMS on January 16, 2025, the parties agreed on and the matter was assigned to the Hon. Joan N. Feeney (Ret.) as arbitrator. On February 4, 2025, the Arbitrator filed her disclosures.

13. The arbitration proceeded through written discovery, multiple rounds of expert disclosures, dispositive motion practice, and an evidentiary hearing before a single arbitrator, during which both parties presented expert testimony concerning the applicable standard of care and causation.

14. At all relevant times, Petitioners were entitled to a fair and impartial decisionmaker.

15. The arbitrator was aware from the outset of the arbitration that the Hon. Bruce Markell (Ret.) would serve as Respondents' standard of care expert and that his opinions would be central to the claims at issue.

16. The initial telephone conference in this matter was held on March 27, 2025. During that meeting, counsel of record discussed with Judge Feeney the various issues in the case, along with expected expert disclosures and testimony. Claimants' counsel, Peter Ito, advised Judge Feeney that Judge Markell was the Claimants' legal expert and would opine on the issues of standard of care, breach, causation and damages. Although there is no recording of that call, Respondents (whom were on the call) and their counsel recall that Judge Feeney responded to Judge Markell's involvement by noting that she may have spoken with him at a conference.

17. During the arbitration, the arbitrator also made a number of procedural and substantive rulings that, from Petitioners' perspective, reflected signs of bias and lack of impartiality. For example, during a telephone conference to discuss a discovery schedule, the Arbitrator proposed a schedule that permitted Respondents to depose the Petitioners, but would not have provided that same opportunity to the Petitioners and instead would require them to file a written request setting forth the merits of their request to conduct depositions. It was not until counsel for Petitioners pointed out how patently unreasonable such a discovery process would be that the arbitrator relented, and permitted Petitioners to also take depositions.

18. Respondents relied extensively on Judge Markell's reports and testimony throughout the arbitration, including in dispositive briefing and at the final hearing.

19. The arbitrator's rulings likewise relied on and adopted the opinions of that expert.

20. In evaluating the competing expert testimony, the arbitrator credited and adopted the opinions of Respondents' expert while discounting and rejecting the opinions of Petitioners'

expert, reflecting a one-sided evaluation of the expert evidence presented. For example, the Arbitrator's order, entered on October 13, 2025, on the Parties' cross-motions for summary disposition completely adopted all statements and opinions of Professor Markell, while, at the same time, denigrating the opinions of Petitioners' expert in an unprofessional fashion.

21. The arbitrator ultimately issued an interim award granting Respondents the full amount of their demand and permitted Respondents to seek additional attorneys' fees, costs, and interest, including the expert's fees.

22. During the pendency of the arbitration, and after substantive rulings had been made, it was discovered that the arbitrator had engaged in a contemporaneous professional collaboration with Respondents' expert witness.

23. On or about December 31, 2025, undersigned counsel conducted a Google search concerning the arbitrator and Respondents' expert and discovered that the arbitrator and the Hon. Bruce Markell (Ret.) had jointly participated in an amicus brief during the pendency of the arbitration.

24. That collaboration involved joint work on an amicus brief addressing legal issues related to the subject matter of the arbitration, which was filed on or about December 10, 2025.

25. The collaboration was ongoing during the arbitration proceedings.

26. The arbitrator did not disclose this relationship to Petitioners at any time.

27. Further, it was later discovered that the Claimants' counsel became aware of the conflict after being notified by Judge Markell on November 17, 2025. Claimants' counsel actively obstructed discovery of the conflict by telling Judge Markell he did not have to divulge the conflict.

28. The undisclosed relationship was not a remote or historical connection. It involved active, contemporaneous collaboration between the arbitrator and a witness retained to advance Respondents' position in the arbitration.

29. Against that backdrop, the arbitrator's undisclosed collaboration with Respondents' expert takes on heightened significance. The collaboration occurred while the expert was actively advocating on behalf of Respondents in this proceeding and while the arbitrator was issuing rulings affecting Petitioners' rights.

30. A professional collaboration of this nature creates, at a minimum, an appearance of alignment between the arbitrator and one party.

31. A reasonable party would expect disclosure of such a relationship in order to evaluate the arbitrator's impartiality.

32. Had this relationship been disclosed, Petitioners would have raised the issue promptly and sought appropriate relief, including disqualification or further inquiry into the nature and scope of the collaboration. Petitioners were deprived of that opportunity.

33. By the time Petitioners learned of the relationship, the arbitration had already progressed through dispositive rulings and the issuance of an interim award.

34. The prejudice is not limited to the ultimate outcome, but includes the loss of the ability to assess and address the arbitrator's neutrality during the proceedings.

35. Disclosure requirements exist to prevent exactly this situation—where a party learns, after substantive rulings have been made, of a relationship that would have prompted inquiry or objection if disclosed earlier.

36. The failure to disclose here deprived Petitioners of the ability to make an informed decision about the arbitrator's continued role in the proceeding.

37. This failure to disclose undermined the fairness of the proceedings and the integrity of the resulting award.

## CAUSE OF ACTION

### Petition to Vacate Arbitration Award

38. Petitioners re-allege and incorporate Paragraphs 1 through 35 as if fully set forth herein.

39. Under D.C. Code § 16-4423(a), a court shall vacate an arbitration award where there was evident partiality by an arbitrator, where the award was procured by corruption, fraud, or other undue means, or where the arbitrator engaged in misconduct that prejudiced a party's rights.

40. The Federal Arbitration Act likewise provides for vacatur where there is evident partiality or misconduct prejudicing a party. 9 U.S.C. § 10(a).

41. Parties are entitled to be informed of relationships that might "create an impression of possible bias," so they can decide whether to proceed or object. *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 149 (1968).

42. The standard is not proof of actual bias, but whether the undisclosed relationship would lead a reasonable person to question the arbitrator's impartiality. These standards apply to disclosures including (1) A financial or personal interest in the outcome of the arbitration proceeding; and (2) *An existing or past relationship* with any of the parties to the agreement to arbitrate or the arbitration proceeding, their counsel or representatives, *a witness*, or other arbitrators. D.C. Code § 16-4412(a)(1)-(2) (emphasis added).

43. The arbitrator's failure to disclose a contemporaneous professional collaboration with Respondents' expert meets that standard.

44. At a minimum, a reasonable party would expect disclosure of a relationship that existed during the arbitration and involved coordinated legal work with a party-aligned witness.

45. The undisclosed relationship constitutes evident partiality and, at a minimum, creates a reasonable impression of bias.

46. The failure to disclose also deprived Petitioners of a fundamentally fair proceeding by preventing them from raising the issue during the arbitration.

47. Accordingly, the award should be vacated under D.C. Code § 16-4423 and 9 U.S.C. § 10(a).

## PRAYER FOR RELIEF

WHEREFORE, Petitioners Dixon Law, LLC and Eric Dixon respectfully request that this Court:

A.  Vacate the arbitration award pursuant to D.C. Code § 16-4423 and 9 U.S.C. § 10(a);

B.  Grant attorneys' fees and costs; and

C.  Grant such other and further relief as the Court deems just and proper.


Dated:  March 31, 2026                    Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ
EDELMAN & DICKER LLP**


*/s/ Timothy S. Carey*
Matthew W. Lee, Esq.
Timothy S. Carey, Esq.
250 West Pratt Street, Suite 2200
Baltimore, Maryland 21201
Telephone:  (410) 962-7385
Facsimile: (410) 962-8758
Matthew.Lee@wilsonelser.com
Timothy.Carey@wilsonelser.com
*Attorneys for Defendants Eric Dixon, Esq.
and Dixon Law, LLC*

332882191v.1