## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DIXON LAW,** *a Maryland limited liability company* | * | |
| **and** | * | |
| **ERIC DIXON,** *an individual* c/o Matthew W. Lee, Esq. | * | |
| Wilson Elser Moskowitz, et al. LLP | | |
| 250 West Pratt Street, Suite 2200 | * | **CASE NO.: 1:26-cv-01101-JEB** |
| Baltimore, Maryland 21201 | | |
| | * | |
| *Petitioners,* | | |
| | | |
| **v.** | * | |
| | | |
| **ERIC POWELL,** *an individual,* | * | |
| **and** | | |
| *RICHARD GRAY, an individual,* | * | |
| c/o Peter W. Ito, Esq. | | |
| Ito Law Group PC | * | |
| 1550 Larimer St., Suite 667 | | |
| Denver, CO 80202 | * | |
| | | |
| *Respondents.* | | |

---

### FIRST AMENDED PETITION TO VACATE ARBITRATION AWARD

Petitioners Dixon Law, LLC and Eric Dixon (collectively, "Petitioners"), by and through undersigned counsel, hereby submit their First Amended Petition to Vacate Arbitration Award against Respondents, pursuant to D.C. Code § 16-4423 and the Federal Arbitration Act, 9 U.S.C. § 10(a), and allege as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 and D.C. Code § 16-4423.

2. This action arises out of an arbitration conducted pursuant to an agreement governed by the laws of the District of Columbia.

335797714v.1

3.   Venue is proper in this District pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1391 and D.C. Code § 16-4423(a) because the arbitration was conducted in this District and the award Petitioners seek to vacate was rendered in this District.

## PARTIES

4.   Petitioner Dixon Law, LLC is a Maryland limited liability company. Its member(s) are citizens of the State of Maryland.

5.   Petitioner Eric Dixon is a citizen of the State of Maryland.

6.   Respondent Eric Powell is a citizen of the State of Colorado.

7.   Respondent Richard Gray is a citizen of the State of California.

8.   The amount in controversy exceeds $75,000.

## INTRODUCTION AND FACTUAL BACKGROUND

9.   This action arises from a legal malpractice dispute submitted to arbitration pursuant to an engagement agreement between the parties. For clarity, Respondents were the claimants in the underlying arbitration proceeding.

10. Respondents retained Petitioners in connection with legal services relating to a transaction involving the sale of Ratio Clothing, including structuring and documenting the sale and related financing arrangements. The parties' engagement was governed by a written agreement (the "Engagement Letter"), which required that any disputes arising out of the representation be resolved through binding arbitration administered by JAMS and governed by the laws of the District of Columbia.

11. A dispute subsequently arose concerning Petitioners' representation, and Respondents asserted a legal malpractice claim against Petitioners. During pre-litigation, Respondents identified

2

the Hon. Bruce Markell (Ret.) as their standard of care expert and produced an expert report setting forth his opinions.

12. Pursuant to the Engagement Letter, Respondents initiated arbitration before JAMS on January 16, 2025, the parties agreed on and the matter was assigned to the Hon. Joan N. Feeney (Ret.) as arbitrator. On February 4, 2025, the Arbitrator filed her disclosures.

13. The arbitration proceeded through written discovery, multiple rounds of expert disclosures, dispositive motion practice, and an evidentiary hearing before a single arbitrator, during which both parties presented expert testimony concerning the applicable standard of care and causation.

14. At all relevant times, Petitioners were entitled to a fair and impartial decisionmaker.

15. The arbitrator was aware from the outset of the arbitration that the Hon. Bruce Markell (Ret.) would serve as Respondents' standard of care expert and that his opinions would be central to the claims at issue.

16. The initial telephone conference in this matter was held on March 27, 2025.  During that meeting, counsel of record discussed with Judge Feeney the various issues in the case, along with expected expert disclosures and testimony.  Claimants' counsel, Peter Ito, advised Judge Feeney that Judge Markell was the Claimants' legal expert and would opine on the issues of standard of care, breach, causation and damages.  Although there is no recording of that call, Respondents (whom were on the call) and their counsel recall that Judge Feeney responded to Judge Markell's involvement by noting that she may have spoken with him at a conference.

17. During the arbitration, the arbitrator also made a number of procedural and substantive rulings that, from Petitioners' perspective, reflected signs of bias and lack of impartiality.  For example, during a telephone conference to discuss a discovery schedule, the Arbitrator proposed a schedule that permitted Respondents to depose the Petitioners, but would not have provided that

3

same opportunity to the Petitioners and instead would require them to file a written request setting forth the merits of their request to conduct depositions.  It was not until counsel for Petitioners pointed out how patently unreasonable such a discovery process would be that the arbitrator relented, and permitted Petitioners to also take depositions.

18. Respondents relied extensively on Judge Markell's reports and testimony throughout the arbitration, including in dispositive briefing and at the final hearing.

19. The arbitrator's rulings likewise relied on and adopted the opinions of that expert.

20. In evaluating the competing expert testimony, the arbitrator credited and adopted the opinions of Respondents' expert while discounting and rejecting the opinions of Petitioners' expert, reflecting a one-sided evaluation of the expert evidence presented. For example, the Arbitrator's order, entered on October 13, 2025, on the Parties' cross-motions for summary disposition completely adopted all statements and opinions of Professor Markell, while, at the same time, denigrating the opinions of Petitioners' expert in an unprofessional fashion.

21. The arbitrator ultimately issued an interim award granting Respondents the full amount of their demand and permitted Respondents to seek additional attorneys' fees, costs, and interest, including the expert's fees. Thereafter, following additional briefing and hearings concerning attorneys' fees, costs, and interest, the Arbitrator issued a Final Award and subsequent Amended Award, granting Respondents approximately $758,554 in damages, $554,000 in attorneys' fees, $108,042.12 in costs and disbursements, and $213,000 in prejudgment interest.

22. During the pendency of the arbitration, and after substantive rulings had been made, it was discovered that the arbitrator had engaged in a contemporaneous professional collaboration with Respondents' expert witness.

4

23. On or about December 31, 2025, undersigned counsel conducted a Google search concerning the arbitrator and Respondents' expert and discovered that the arbitrator and the Hon. Bruce Markell (Ret.) had jointly participated in an amicus brief during the pendency of the arbitration.

24. That collaboration involved joint work on an amicus brief addressing legal issues related to the subject matter of the arbitration, which was filed on or about December 10, 2025.

25. The collaboration was ongoing during the arbitration proceedings.

26. The arbitrator did not disclose this relationship to Petitioners at any time.

27. Further, it was later discovered that the Claimants' counsel became aware of the conflict after being notified by Judge Markell on November 17, 2025.  Claimants' counsel actively obstructed discovery of the conflict by telling Judge Markell he did not have to divulge the conflict. Despite that conflict, Respondents continued to pursue substantial claims for attorneys' fees, expert fees, costs, and interest before the same arbitrator without disclosing the relationship.

28. The undisclosed relationship was not a remote or historical connection. It involved active, contemporaneous collaboration between the arbitrator and a witness retained to advance Respondents' position in the arbitration.

29. Against that backdrop, the arbitrator's undisclosed collaboration with Respondents' expert takes on heightened significance. The collaboration occurred while the expert was actively advocating on behalf of Respondents in this proceeding and while the arbitrator was issuing rulings affecting Petitioners' rights.

30. A professional collaboration of this nature creates, at a minimum, an appearance of alignment between the arbitrator and one party.

335797714v.1

31. A reasonable party would expect disclosure of such a relationship in order to evaluate the arbitrator's impartiality.

32. Had this relationship been disclosed, Petitioners would have raised the issue promptly and sought appropriate relief, including disqualification or further inquiry into the nature and scope of the collaboration. Petitioners were deprived of that opportunity.

33. By the time Petitioners learned of the relationship, the arbitration had already progressed through dispositive rulings and the issuance of an interim award.

34. Following discovery of the undisclosed relationship on December 31, 2025, Petitioners raised the issue before the Arbitrator and sought disqualification and relief accordingly. The Arbitrator denied that request and continued to preside over the proceedings for several additional months, including issuing rulings on attorneys' fees, costs, interest, and the Final and Amended Final Awards.

35. The Arbitrator awarded Respondents $554,000 in attorneys' fees, a substantial enhancement over the claimed lodestar amount, in addition to $108,042.12 in costs and disbursements, and $213,000 in interest.

36. In the Final Award, the Arbitrator expressly approved a multiplier enhancement of Respondents' claimed lodestar amount. Although the original Final Award incorrectly referred to the enhancement as "2.5 percent," the Arbitrator subsequently issued an Amended Final Award on May 5, 2026, correcting the language to reflect approval of a "2.5 times" enhancement.

37. In issuing the Final Award and Amended Final Award, the Arbitrator expressly rejected Petitioners' objections to the requested attorneys' fees and enhancement multiplier, concluding that Petitioners' arguments "lack merit" and proceeded to award Respondents 2.5 times enhancement over the lodestar amount.

6

335797714v.1

38. The timing and sequence of these rulings further underscores the prejudice resulting from the undisclosed relationship and the appearance of partiality created by the arbitrator's continued participation in the proceedings after the relationship was discovered and objected to.

39. The prejudice is not limited to the ultimate outcome, but includes the loss of the ability to assess and address the arbitrator's neutrality during the proceedings.

40. Disclosure requirements exist to prevent exactly this situation—where a party learns, after substantive rulings have been made, of a relationship that would have prompted inquiry or objection if disclosed earlier.

41. The failure to disclose here deprived Petitioners of the ability to make an informed decision about the arbitrator's continued role in the proceeding.

42. This failure to disclose undermined the fairness of the proceedings and the integrity of the resulting award.

## CAUSE OF ACTION

### Petition to Vacate Arbitration Award

43. Petitioners re-allege and incorporate Paragraphs 1 through 35 as if fully set forth herein.

44. Under D.C. Code § 16-4423(a), a court shall vacate an arbitration award where there was evident partiality by an arbitrator, where the award was procured by corruption, fraud, or other undue means, or where the arbitrator engaged in misconduct that prejudiced a party's rights.

45. The Federal Arbitration Act likewise provides for vacatur where there is evident partiality or misconduct prejudicing a party. 9 U.S.C. § 10(a).

46. Parties are entitled to be informed of relationships that might "create an impression of possible bias," so they can decide whether to proceed or object. *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 149 (1968).

7

47. The standard is not proof of actual bias, but whether the undisclosed relationship would lead a reasonable person to question the arbitrator's impartiality. These standards apply to disclosures including (1) A financial or personal interest in the outcome of the arbitration proceeding; and (2) *An existing or past relationship* with any of the parties to the agreement to arbitrate or the arbitration proceeding, their counsel or representatives, *a witness*, or other arbitrators. D.C. Code § 16-4412(a)(1)-(2) (emphasis added).

48. The arbitrator's failure to disclose a contemporaneous professional collaboration with Respondents' expert meets that standard.

49. At a minimum, a reasonable party would expect disclosure of a relationship that existed during the arbitration and involved coordinated legal work with a party-aligned witness.

50. The undisclosed relationship constitutes evident partiality and, at a minimum, creates a reasonable impression of bias.

51. The sheer magnitude of the attorneys' fee enhancement awarded by the arbitrator, particularly *after* Petitioners raised concerns regarding the undisclosed relationship, only further undermines confidence in the neutrality and fairness of the proceedings.

52. The failure to disclose also deprived Petitioners of a fundamentally fair proceeding by preventing them from raising the issue during the arbitration.

53. Accordingly, the award should be vacated under D.C. Code § 16-4423 and 9 U.S.C. § 10(a).

### **PRAYER FOR RELIEF**

WHEREFORE, Petitioners Dixon Law, LLC and Eric Dixon respectfully request that this Court:

A. Vacate the arbitration award pursuant to D.C. Code § 16-4423 and 9 U.S.C. § 10(a);

B. Grant attorneys' fees and costs; and

335797714v.1

C.  Grant such other and further relief as the Court deems just and proper.


Dated:  May 19, 2026                          Respectfully submitted,


                                              */s/ Matthew W. Lee*
                                              Matthew W. Lee (D.C. Bar #460183)
                                              WILSON, ELSER, MOSKOWITZ
                                              EDELMAN & DICKER LLP
                                              8444 Westpark Drive, Suite 510
                                              McLean, Virginia 22102
                                              Telephone:  703-852-7788
                                              Facsimile: 703-245-9301
                                              Matthew.Lee@wilsonelser.com
                                              *Attorneys for Petitioners Eric Dixon, Esq. and*
                                              *Dixon Law, LLC*

9

335797714v.1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 19th day of May, 2026, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send notification

of such filing to all counsel of record.

*/s/ Matthew W. Lee*
Matthew W. Lee (D.C. Bar #460183)
WILSON, ELSER, MOSKOWITZ
EDELMAN & DICKER LLP
8444 Westpark Drive, Suite 510
McLean, Virginia 22102
Telephone:  703-852-7788
Facsimile: 703-245-9301
Matthew.Lee@wilsonelser.com
*Attorneys for Petitioners Eric Dixon, Esq. and*
*Dixon Law, LLC*

335797714v.1