**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DIXON LAW, *et al.*,**<br><br>**Petitioners,**<br><br>**v.**<br><br>**ERIC POWELL, *et al.*,**<br><br>**Respondents.** | **Civil Action No. 26-1101 (JEB)** |

**MEMORANDUM OPINION**

Should an arbitrator's failure to disclose to the parties the fact that she was a co-signatory on an amicus brief with one of the parties' experts result in vacatur of the award? How about if the amicus engagement occurred after she had made her merits ruling and she had early on explained her professional relationship with the expert? Petitioners Dixon Law and Eric Dixon (jointly "Dixon") think so and thus seek to vacate an arbitral award in a legal-malpractice case under the Federal Arbitration Act, 9 U.S.C. § 10(a), and the District of Columbia Revised Uniform Arbitration Act, D.C. Code § 16-4423. Respondents Eric Powell and Richard Gray think otherwise, and they have the better of the argument. The Court will thus confirm the award.

## I. Background

### A. Malpractice Dispute

Respondents Powell and Gray hired Petitioners to assist in the sale of their clothing company. See ECF No. 8-1 (Engagement Agreement) at 1. Specifically, they wanted Dixon to ensure that they held a valid, perfected security interest that would protect their ability to collect

on the purchase price. See ECF Nos. 5-1 (Declaration of Eric Powell), ¶ 2; 5-2 (Declaration of Richard Gray), ¶ 2. In their telling, Dixon instead obtained collateral that was either valueless or not properly perfected due in part to filing errors. See ECF No. 5-3, Exh. 5 (Summary Disp.) at 23–24; Powell Decl., ¶ 2; Gray Decl., ¶ 2. The buyer never paid up, see Summary Disp. at 12–16, so Powell and Gray sued Dixon for professional negligence in federal district court in Colorado, where they alleged a "substantial part" of the events transpired. See ECF No. 5-3 (Declaration of Peter W. Ito), ¶ 2; Powell v. Dixon Law, LLC, No. 24-3318, ECF No. 1 (Compl.), ¶ 22 (D. Colo. Nov. 27, 2024). Dixon then moved to dismiss based on the arbitration clause in their agreement, and Powell and Gray acquiesced. See Ito Decl., ¶ 3; see also Engagement Agreement, ¶ 14.

In January 2025, the parties began binding arbitration before the Washington, D.C., office of JAMS (formerly known as Judicial Arbitration and Mediation Services), consistent with their contract. See Ito Decl., ¶¶ 3–4; ECF No. 4 (Dixon Am. Pet.), ¶ 12; Engagement Agreement, ¶ 14. Dixon proposed appointing retired federal bankruptcy judge Joan N. Feeney as arbitrator, and Powell and Gray agreed. See Ito Decl., ¶ 4; Dixon Am. Pet., ¶ 12; ECF No. 5-3, Exh. 2 (Appointment of Arbitrator).

After briefing and discovery, see ECF No. 5-3, Exh. 4 (Scheduling Order); Dixon Am. Pet., ¶ 13, Judge Feeney granted summary disposition in favor of Powell and Gray, see Summary Disp. at 40–49, and held an evidentiary hearing on the damages amount. See Ito Decl., ¶ 15. On November 4, 2025, she entered an interim award of $758,554, plus reasonable attorney fees, costs, and disbursements. See ECF No. 5-3, Exh. 6 (Interim Award) at 31. Per her instructions, Powell and Gray then moved for those remaining sums plus interest. See ECF No. 8-5 (Mot. for Fees, Costs, and Disbursements) at 16; id. at 14 n.6 (referring to separate motion for interest).

On April 27, 2026, Judge Feeney issued a final award of (1) $758,554 in damages; (2) $554,000 for attorney fees; (3) $108,322.97 for costs and disbursements; (4) $213,132.28 in prejudgment interest; and (5) post-judgment interest to accrue until payment of the award. See ECF No. 5-3, Exh. 7 (Final Award) at 14–15. She later corrected the amount of costs, adjusting it down to $108,042.12 (about $300 less) in an amended award dated May 5, 2026. See id., Exh. 9 (Am. Final Award) at 15. The Amended Final Award totaled $1,633,728.40. Id.

B. Disclosure Dispute

What matters more than those sums are the disclosures that Judge Feeney made during the proceedings. At the outset, she completed a JAMS disclosure form in which she noted that "JAMS neutrals regularly engage" in professional activities and that it was possible that someone "connected with this proceeding" had overlapped with her at such events. See ECF No. 5-3, Exh. 3 (Disclosures) at 3. Later, upon learning at the preliminary status conference that Powell and Gray had retained professor and retired bankruptcy judge Bruce A. Markell as an expert witness, Judge Feeney disclosed that she had interacted professionally with him in the past. See Ito Decl., ¶¶ 6–7; Dixon Am. Pet., ¶ 16; ECF No. 5-3, Exh. 10-A (Declaration of Joan N. Feeney), ¶ 1; see also Scheduling Order at 1 (memorializing disclosure). She also declined an invitation to participate in an upcoming panel with Judge Markell in light of the pending arbitration. See ECF No. 8-3 (Webinar Correspondence) at 2.

Months later, on November 5, 2025 — the day after she issued the interim award — Judge Feeney received an email from a professor asking her and three other retired bankruptcy judges to join a brief as "named party amici" in a consumer-bankruptcy case before the U.S. Supreme Court. See Feeney Decl., ¶ 3. Only after she expressed interest did she learn that Judge Markell might sign on, too. Id. At that point, Judge Markell notified Powell and Gray's counsel

about the brief. Id.; ECF No. 8-4 (Amicus Correspondence). He also informed the professor of his role in the arbitration, copying Judge Feeney on the email. See Feeney Decl., ¶ 3.

In late December, Dixon discovered the submitted brief through a Google search. See Dixon Am. Pet., ¶ 23; see also ECF No. 8-7 (Mot. to Disqualify), Exh. 5 (Amicus Brief). Petitioners soon moved to disqualify Judge Feeney, alleging that she had failed to disclose "her work with Judge Markell on the amicus brief" while "preparing to rule on the $750,000 fee and costs requests (including Judge Markell's fees) this week." Mot. to Disqualify, ¶ 16. A member of the National Arbitration Committee (NAC) ultimately recommended denial of the Motion, writing in his report that "[t]here was no material contact between Feeney and Markell, and Feeney made robust disclosures about her relationship with Markell early in the case." ECF No. 5-3, Exh. 10 (Chernick Report) at ECF pp. 161–64. NAC adopted his recommendation, see id. at ECF p. 162, and Judge Feeney went on to issue the final award.

Both parties timely filed suits with this Court, which consolidated the cases. See Minute Order of May 19, 2026. Not surprisingly, Dixon seeks vacatur under the FAA and the D.C. RUAA, while Powell and Gray request confirmation under the same. See generally Dixon Am. Pet.; ECF No. 6 (Powell Mot.); see also 9 U.S.C. §§ 9, 10 (providing for judicial confirmation and vacatur of arbitral awards); D.C. Code §§ 16-4422 to -4423 (same); Engagement Agreement, ¶ 12 ("Judgment on the award may be entered by any court of competent jurisdiction.").

## II. Legal Standard

In enacting the FAA, 9 U.S.C. § 1 *et seq.*, Congress "replace[d] judicial indisposition to arbitration with a 'national policy favoring it and placing arbitration agreements on equal footing with all other contracts.'" Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 578 (2008) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)) (cleaned up).

The FAA establishes "an alternative to the complications of litigation," Revere Copper & Brass Inc. v. Overseas Private Inv. Corp., 628 F.2d 81, 83 (D.C. Cir. 1980), and provides for "expedited judicial review to confirm, vacate, or modify arbitration awards." Hall St. Assocs., 552 U.S. at 578.

The D.C. Circuit has repeatedly emphasized that "judicial review of arbitral awards is extremely limited." Kanuth v. Prescott, Ball & Turben, Inc., 949 F.2d 1175, 1178 (D.C. Cir. 1991). "Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." Id. (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)); see also Kurke v. Oscar Gruss & Son, Inc., 454 F.3d 350, 354 (D.C. Cir. 2006). All that is required is a "fundamentally fair" arbitral hearing, Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 481 F.3d 813, 816 (D.C. Cir. 2007), which in turn "requires only notice, opportunity to be heard and to present relevant and material evidence and argument before the decision makers, and that the decision makers are not infected with bias." Howard Univ. v. Metro Campus Police Officer's Union, 519 F. Supp. 2d 27, 39 (D.D.C. 2007), aff'd, 512 F.3d 716 (D.C. Cir. 2008). A party seeking vacatur under any of the FAA's four limited grounds, see 9 U.S.C. § 10(a), must therefore "clear a high hurdle." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010). The D.C. RUAA likewise contemplates "extremely limited" judicial review. Umana v. Swidler & Berlin, Chartered, 745 A.2d 334, 339 (D.C. 2000).

## III. Analysis

Petitioners principally argue that Judge Feeney's failure to disclose her participation in the amicus brief alongside Judge Markell satisfies the standards for "evident partiality" under both the FAA and the D.C. RUAA, justifying vacatur of the arbitral award. See Dixon Am. Pet.,

¶¶ 44–50 (citing 9 U.S.C. § 10(a) and D.C. Code §§ 16-4423(a), -4412(a)(1)–(2)). Apparently as part of their "evident partiality" argument, they add that the "sheer magnitude" of the fees award "further undermines confidence in the neutrality and fairness of the proceedings." Id., ¶ 51; see also id., ¶ 52 ("The failure to disclose also deprived Petitioners of a fundamentally fair proceeding."). In addition, Petitioners contend that D.C. Code § 4412 — which establishes specific disclosure obligations distinct from § 4423(a)'s rule against evident partiality — independently warrants vacatur. See ECF No. 8 (Dixon Am. Opp.) at 17. They mention "misconduct," too, see Dixon Am. Pet., ¶¶ 44–45, which can serve as a separate ground for vacatur under 9 U.S.C. § 10(a)(3) and D.C. Code § 16-4423(a). As they invoke that issue "obliquely" at best, the Court will deem it forfeited. White v. Four Seasons Hotel & Resorts, 244 F. Supp. 3d 1, 5 (D.D.C. 2017).

A. Evident Partiality

As an initial matter, Dixon's Amended Petition overlooks Circuit precedent on the standard for evident partiality under the FAA. Petitioners invoke 9 U.S.C. § 10(a), which authorizes vacatur of an award "where there was evident partiality . . . in the arbitrators," among other narrow circumstances. See Dixon Am. Pet., ¶ 45. Relying on language from the majority opinion in Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145 (1968), Dixon argues that § 10(a) requires arbitrators to disclose any dealings that might "create an impression of possible bias." Dixon Am. Pet., ¶ 46 (quoting Commonwealth Coatings, 393 U.S. at 149). But the D.C. Circuit — citing the rule of Marks v. United States, 430 U.S. 188 (1977) — has instead applied the "narrower" standard advanced in the concurrence, under which arbitrators have a duty to disclose only "significant interests in the parties," Republic of Argentina v. AWG Grp. LTD., 894 F.3d 327, 334 & n.2 (D.C. Cir. 2018), and challengers bear

the burden of presenting "specific facts that indicate improper motives on the part of the arbitrator." Id. at 335; see Andresen v. Intepros Fed., Inc., 2024 WL 4164660, at *46 (D.D.C. Sep. 12, 2024) (restating D.C. Circuit rule and rejecting alternative "reasonable person" test).

That is a "steep slope to climb" for challengers. Republic of Argentina, 894 F.3d at 335. True, an arbitrator who has a sporadic but lucrative business relationship with a party must disclose that interest, on pain of potential vacatur. Commonwealth Coatings, 393 U.S. at 146, 150. But she need not disclose "trivial" interests, even assuming that she has "full knowledge" of them. Republic of Argentina, 894 F.3d at 335. The D.C. Circuit has accordingly upheld awards in cases where the arbitrator's former law firm represented a party in an unrelated matter, id. (discussing Al-Harbi v. Citibank, N.A., 85 F.3d 680, 682–84 (D.C. Cir. 1996)), and where the arbitrator sat on the board of a company with large passive investments in a party to the arbitration. Id. at 335–36. Evident partiality requires more.

The Court must acknowledge that it harbors some doubt that the D.C. Circuit in Republic of Argentina properly characterized the holding of Commonwealth Coatings, given that the concurring Justices in the latter case joined the Court's opinion and did not purport to disagree with it. See Commonwealth Coatings, 393 U.S at 150–52 (White, J., concurring) (joining Justice Black's opinion for the Court along with Justice Marshall and reframing rather than rejecting majority's standard); but see Republic of Argentina, 894 F.3d at 334 (stating that "the Justices could not agree on a single rationale" and calling Justice Black's opinion a "plurality opinion"). Dixon, however, does not advance that argument, and whatever test applies, the Court retains discretion under the FAA to determine whether vacatur is proper. See 9 U.S.C. § 10(a) (providing that reviewing court "may make an order vacating the award . . . where there was evident partiality") (emphasis added).

The answer here is clear: Petitioners have not met their burden under either test. The Court focuses its analysis on the D.C. Circuit standard while making clear that Petitioners would not prevail under the majority's rule in Commonwealth Coatings either.

First, the closest Petitioners come to alleging improper motive, as required by the D.C. Circuit, is in claiming that one of Judge Feeney's opinions "denigrat[ed] the opinions of Petitioners' expert in an unprofessional fashion," Dixon Am. Pet., ¶ 20 — but the relevant text belies that characterization. See Summary Disp. at 47–48. In any event, an arbitrator's ostensibly "dismissive tone" is "insufficient evidence" of evident partiality. Andresen, 2024 WL 4164660, at *43.

Their better argument is that Judge Feeney had significant undisclosed interests in a party, but that one does not hit the target either. Even assuming that dealings with experts can qualify as "significant interests in the parties," Republic of Argentina, 894 F.3d at 334 (emphasis added), Judge Feeney orally disclosed her professional acquaintance with Judge Markell as soon as she learned of his involvement in the arbitration. While the parties dispute the details, compare Dixon Am. Pet., ¶ 16 (stating Judge Feeney disclosed that she "may have spoken with [Judge Markell] at a conference"), with Powell Decl., ¶ 7 (casting Dixon's description as "misleading" and Judge Feeney's disclosure as "clear and unequivocal"), Judge Feeney told NAC under penalty of perjury that she "immediately disclosed" that she knew Judge Markell, had participated in a webinar with him, was part of the same bankruptcy-related professional associations, and saw him regularly at national conferences. See Feeney Decl., ¶ 1; see also Powell Decl., ¶ 5 (stating that arbitrator disclosed she knew expert professionally and had recently participated in panel with him); Gray Decl., ¶ 5 (same). At the time, Petitioners lodged no objections. See ECF No. 5 (Powell Opp.) at 2 (noting Dixon's counsel told Judge Feeney that

Petitioners had no issues); Dixon Am. Opp. at 4 (not disputing this); see also Feeney Decl., ¶ 1 ("I asked counsel if they had any issue with my serving as arbitrator and recall counsel to [Dixon] stated that they did not.").

Even if Judge Feeney had not made such detailed disclosures, her relationship with Judge Markell — including their joining the same amicus brief — would not warrant vacatur for evident partiality. Mere professional acquaintance gives rise to a "trivial interest," if any, which is not sufficient to demand disclosure. Republic of Argentina, 894 F.3d at 335; Feeney Decl., ¶ 1 n.1 (stating that most bankruptcy judges know each other and that she has "never socialized with Professor Markell"); cf. Republic of Argentina, 894 F.3d at 334 (framing some "business relationship[s]" with money at stake as "trivial") (quotation marks and citation omitted).

The amicus brief, moreover, did not transform what was at most a trivial interest into a significant one. Indeed, if an arbitrator's membership on the board of a company that had invested more than two billion dollars in a party was not enough for the D.C. Circuit, see Republic of Argentina, 894 F.3d at 334, then an arbitrator's and expert's signatures on an amicus brief authored by someone else and signed by six people is not enough here. Judges Feeney and Markell say they did not even discuss the brief's substance, much less collaborate on it. See ECF No. 5-4 (Declaration of Bruce A. Markell), ¶¶ 15–16 (stating arbitrator and expert had "no direct one-on-one communication" about the brief, "did not collaborate directly" on it, and "did not discuss the content"); Feeney Decl., ¶ 3 (similar). Because the bare act of joining an amicus brief creates neither a "significant interest[]" in a co-signatory, Republic of Argentina, 894 F.3d at 334, nor an "impression of possible bias" such that the joiner "might reasonably be thought biased" in favor of a co-signatory, Commonwealth Coatings, 393 U.S. at 149–150, Petitioners' arguments based on evident partiality — and fundamental fairness generally — come up short.

Dixon also misconstrues the D.C. RUAA's parallel provision. Mirroring the FAA, albeit in mandatory terms, D.C. Code § 16-4423(a) provides that a court "shall vacate an award made in the arbitration proceeding if" there was "[e]vident partiality by an arbitrator appointed as a neutral arbitrator." Dixon erroneously suggests — drawing on language from a different provision discussed in more detail below, see D.C. Code § 16-4412 — that D.C.'s test for "evident partiality" is whether an undisclosed relationship "would lead a reasonable person to question the arbitrator's impartiality." Dixon Am. Pet., ¶ 47. In fact, however, D.C. courts ask whether a relationship "give[s] rise to a sense of loyalty to one side of the dispute" or is "so intimate — personally, socially, professionally, or financially — as to cast serious doubt on an arbitrator's impartiality." C.R. Calderon Constr., Inc. v. Grunley Constr. Co., 257 A.3d 1046, 1056 (D.C. 2021) (cleaned up); see also id. ("[C]lose personal relationships are much more problematic than professional interconnections."). As with the D.C. Circuit standard, challengers must show "specific facts" that "indicate improper motives on the part of the arbitrator." Umana, 745 A.2d at 340 (quoting Celtech, Inc. v. Broumand, 584 A.2d 1257, 1259 (D.C. 1991)). Because Dixon has not done so here, and because signing an amicus brief does not by itself create a "sense of loyalty" to a co-signatory, Calderon, 257 A.3d at 1056 (cleaned up), vacatur for evident partiality is neither required nor appropriate under the D.C. RUAA. Any further substantive review is beyond the scope of this Court's "extremely limited" role under both federal and D.C. law. Kanuth, 949 F.2d at 1178; Umana, 745 A.2d at 339.

B. D.C. Code § 16-4412

To the extent that Petitioners have adequately invoked D.C. Code § 16-4412 as an alternative ground, that argument founders, too. The provision states, in pertinent part, that a prospective arbitrator must make a "reasonable inquiry" and "disclose . . . any known facts that a

reasonable person would consider likely to affect the impartiality of the arbitrator," including an "existing or past relationship with . . . a witness." Once appointed, arbitrators have a continuing obligation to disclose such information. See § 16-4412(b). If they disclose it and a party objects, or if they fail to disclose it entirely, a court "may" vacate an award. See §§ 16-4412(c)–(d).

In this context, then, the Court has discretion to determine whether an "existing or past relationship . . . with a witness" should result in vacatur. See §§ 16-4412(a)(2), (b)–(d); see Calderon, 257 A.3d at 1053 ("The statute describes in general terms disclosures that should be made, but it also makes clear that some failures to disclose will not require the court to vacate the award."). As described above, Judge Feeney's initial disclosures put Dixon on notice that she had interacted with Judge Markell in professional settings. The judges' independent decisions to sign onto the amicus brief did not step up their relationship so significantly as to require a supplemental disclosure, particularly given that they did not author the brief, collaborate on it, or discuss its content. While disclosure might still have been wise, Judge Feeney's silence no more warrants vacatur under D.C. Code § 16-4412 than it does under the evident-partiality provisions of the FAA and the D.C. RUAA.

Confirmation of the award is therefore required. Under the FAA, a court reviewing an arbitral award "must" confirm it "unless the award is vacated, modified, or corrected" as prescribed by the statute. See 9 U.S.C. § 9. Similarly, the D.C. RUAA provides that a court "shall issue a confirming order unless the award" is modified, corrected, or vacated pursuant to the Act. See D.C. Code § 16-4422. Because the Court will deny the Petition to Vacate, it will grant Respondents' Motion to Confirm.

* * *

As to Respondents' other requests, see Powell Opp. at 40–42, 44, the Court will exercise

its discretion under the D.C. RUAA not to award attorney fees and costs incurred after entry of the final award. Respondents invoke D.C. Code § 16-4225(c), which provides that a court "may add reasonable attorney's fees . . . incurred" by the prevailing party in a contested judicial proceeding following arbitration. See also D.C. Code § 16-4225(b) (similar for costs). The decision "depends on equitable considerations and is committed to the trial court's sound discretion"; relevant factors include "the potential merit of the losing party's arguments and the losing party's motivation in making those arguments." Illinois Farmers Ins. Co. v. Hagenberg, 167 A.3d 1218, 1233–34 (D.C. 2017) (quotation marks and citation omitted). To be sure, Petitioners have arguably made mountains out of molehills. Even so, their argument that Judge Feeney should have disclosed the amicus brief is not utterly meritless and does not appear to have been made in bad faith. The Court will therefore decline to award fees and costs beyond those already reflected in the arbitral award.

It will, however, grant pre-judgment interest "consistent with the underlying arbitration award." Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria, 932 F. Supp. 2d 153, 164 (D.D.C. 2013), aff'd, 603 F. App'x 1 (D.C. Cir. 2015); see also LLC SPC Stileks v. Republic of Moldova, 985 F.3d 871, 881 (D.C. Cir. 2021) (following this approach without expressly adopting it); Burlington Ins. Co. v. Okie Dokie, Inc., 398 F. Supp. 2d 147, 159 (D.D.C. 2005) ("[C]ourts usually award prejudgment interest absent some justification for withholding such an award.") (quotation marks and citation omitted). The arbitrator awarded prejudgment interest "in accordance with the provisions of Colorado law," so this Court will order that Petitioners pay Respondents the interest that has accrued from the date of the Final Award (not the Amended Final Award, which adjusted only costs) to this day pursuant to C.R.S. § 5-12-102(1)(b), at the rate of eight percent, compounded annually. See Final Award at 14–15; Am. Final Award at 14–

15. In addition, this Court will award post-judgment interest at the rate specified in 28 U.S.C. § 1961. See Archirodon Constr. (Overseas) Co. v. Gen. Co. for Ports of Iraq, 2024 WL 341066, at *7 (D.D.C. Jan. 30, 2024).

**IV. Conclusion**

For the foregoing reasons, the Court will deny Dixon's First Amended Petition to Vacate the Arbitration Award and grant Powell and Gray's Motion to Confirm the Amended Arbitration Award. It will also order Powell and Gray to submit an interest calculation and an updated proposed form of judgment.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: September 2, 2026